UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CROMARTIE, AARON
    Plaintiff

v.

STATE OF CONNECTICUT,
DEPARTMENT OF CORRECTION
    Defendant

## COMPLAINT

**I.    PRELIMINARY STATEMENT**

1.    This is an action for equitable relief and damages as a result of Defendants' violations of the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. §2000(e) *et. seq.*; Connecticut's Fair Employment Practices Act, C. G. S. §46(a)-51 *et seq.;* C. G. S. §46a-60 *et seq.*, for employment discrimination and harassment on the basis of race; and state tort claims on the basis of Slander, Defamation and Defamation per se.

**II.    THE PARTIES**

2.    Aaron Cromartie (hereinafter "Plaintiff") is an African American male and a citizen of the state of Connecticut, who resides at 13 Alexander Road, Bloomfield, CT 06002.

3.    The Defendant is State of Connecticut Department of Correction (hereafter "DOC") that has an office and place of business at 24 Wolcott Hill Road, Wethersfield CT 06109.

**III.     JURISDICTION AND VENUE**

4.     The jurisdiction of this court is founded upon 28 U. S. C. §1331 and 28 U. S. C. §1343. Venue is proper in the District of Connecticut pursuant to 28 U. S. C. § 1391(b) in that the claims arose in this district and Plaintiff resides in this district. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked pursuant to 28 U. S. C. §1367(a) because they are so related to the federal claims in this action that they form part of the same case or controversy.

**IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5.     Plaintiff has exhausted administrative remedies by timely filing claims of discrimination with the Equal Employment Opportunity Commission ("EEOC") which were dual filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO") against Defendant State of Connecticut, Department of Correction. Plaintiff was granted a release of jurisdiction by CHRO on August 17, 2021, in Case No. 2140257.  He was granted a right to sue letter by EEOC on August 31, 2021, in Case No. 16A-2021-00586.

**V.     STATEMENTS OF FACT**

6.     Plaintiff, Aaron Cromartie, is an African-American male who is a resident of the State of Connecticut.

7.     Plaintiff applied for and was hired on July 3, 2020, for the position of Warehouse Supervisor for the State of Connecticut, Department of Correction (hereafter referred to as "DOC").

8.  Plaintiff was admitted to the DOC training academy on or about  2020.

9.  As part of the academy training, Plaintiff attended a class instructed by Captain Papoosha on Gang Security on or about August 4, 2020.

10. Throughout the gang security training, Captain Papoosha constantly referred to Black and Latino gangs, while failing to mention gangs populated by Whites.

11. At the end of the class Papoosha upend for questions and answers. Plaintiff asked why no White gangs were represented or talked about during the class. He stated "I'm not trying to be funny but it seems as though the class was disproportionally and heavily geared towards Black and Latinos gangs, no white gangs had been mentioned in the class".

12. Papoosha replied to Plaintiff that there was no need to talk about White gangs because there were not as many as Black and Latino gangs.

13. During the class Papoosha even used the "N" word to reference something a gang member said. Plaintiff was offended and embarrassed by this especially because there were only a few Blacks in the class.

14. On or about September 24, 2020, Plaintiff participated in the graduation ceremony from the academy. When he walked across the stage to receive his certificate, Plaintiff threw up the Texas Longhorns Hook-Em Horns sign, which is also the universal sign language sign for I love you.

15.    Approximately four (4) weeks after Plaintiff graduated from the academy, Captain Daniel Papoosha called him into the office for two interviews and accused him of being a Latin king gang member.

16.    Plaintiff replied that only Hispanics can be a member of the Latin Kings and that he was not Hispanic.

17.    Plaintiff was then called into the office for a second interview, at which time Captain Daniel Papoosha accused him of being a member of the Bloods gang. or possibly a Bloods gang member with crips affiliation. Papoosha stated to Plaintiff that they had gone to his Facebook and Instagram accounts and because many of his pictures were taken with him wearing red clothing, hat, shirts, shoes, that he must therefore be a member o the bloods gang.  Papoosha even showed Plaintiff photographs from his social media of his minor children wearing red clothing.

18.    Defendant DOC contended that the color red and the Chicago bulls insignia are known to be associated with the Bloods as gang identifiers.

19.    Plaintiff vehemently denied the accusation regarding Bloods gang membership. Plaintiff stated that he was a licensed and ordained minister, an assistant pastor, and youth football coach for the Hartford Hurricanes. He stated that he had never been a gang member.

20.    When Plaintiff informed Papoosha that he was a minister, the replied was "that don't mean nothing".

21. Plaintiff was asked if he had any tattoos, to which Plaintiff denied having any tattoos.

22. On December 4, 2020, Captain Colon informed Plaintiff that he was being terminated from his position as Warehouse Supervisor.  Captain Colon was unable to inform Plaintiff of the reasons fo the termination.

23. Plaintiff was given a letter of termination dated December 4, 2020, stating the he was being terminated during his working test period for violation of Administrative Directive 2.17, Employee Conduct; he had engaged in unprofessional behavior that could negatively reflect on the agency.

24. During his period of training in the academy and after he assumed duties s warehouse supervisor, Plaintiff was not given any warnings or discipline questioning his job performance.  For his 30, 60 and 90 day performance appraisals, Plaintiff received a pass.

25. A DOC discipline routing slip provided alleged that the incident date resulting in the termination was September 24, 2020, when a photo of cadets was taken and posted on social media.  It claimed that Plaintiff was observed displaying a potential Security Risk group ("SRG") related hand sign.  The discipline slip claimed that the hand sign displayed by Plaintiff was a known SRG identified for the Latin Kings and Bloods.

26. Defendant DOC later contended that Plaintiff was not terminated for being a gang member because this was not conclusively determined.  "Instead, it was

determined that his actions were unprofessional and could negatively reflect on the Department because the hand sign is viewed as possibly being related to Security Risk groups."

27. Defendant DOC admitted that Plaintiff was not terminated for performance related reasons.

28. During at least the two years prior to Plaintiff's termination, only one other employee has been terminated for displaying a perceived gang sign. That employee was also a Black male.

29. DOC Officers who are Hispanic have similarly been accused of being involved in gang affiliation however none have been terminated.

30. DOC Officers who are Caucasian have been similarly accused of being involved in gang affiliation but are still employed by DOC.

**COUNT ONE:** **C.G.S. SECTION 31-51q**

1.-30. The allegations set forth in paragraphs 1-30 are incorporated by reference and made paragraphs 1-30 of this Count One.

31. Plaintiffs' conduct in speaking out about and questioning what appeared to be a racially discriminatory treatment of inmates and correctional department employees was protected speech on a matter of public concern. This speech was protected by the First Amendment to the U. S. Constitution.

32. The conduct of Plaintiff did not substantially or materially interfere with his bona fide job performance or his working relationship with the employer.

33. Plaintiff has been damaged thereby.

**COUNT TWO:      C.G.S. SECTION 31-51q**

1.-30. The allegations set forth in paragraphs 1-30 are incorporated by reference and made paragraphs 1-30 of this Count Two.

31. Plaintiff's conduct in speaking out about and questioning what appeared to be a racially discriminatory treatment of inmates and correctional department employees was protected speech on a matter of public concern. This speech was protected by the Connecticut Constitution.

32. The conduct of Plaintiff did not substantially or materially interfere with his bona fide job performance or his working relationship with the employer.

33. By its termination of Plaintiff, Defendant DOC violated C. G. S. Section 31-51q.

34. Plaintiff has been damaged thereby.

**COUNT THREE:    TITLE VII, CIVIL RIGHTS ACT OF 1964, AS AMENDED( RACE DISCRIMINATION)**

1.- 30. The allegations set forth in paragraphs 1-30 are incorporated by reference and made paragraphs 1-30 of this Count Three.

31. Plaintiff was terminated from his employment when similarly situated Caucasian and Hispanic employees were not so terminated.

32. Plaintiff has been damaged thereby.

## COUNT FOUR:    TITLE VII, CIVIL RIGHTS ACT OF 1964, AS AMENDED ( RETALIATION)

1.-30.   The allegations set forth in paragraphs 1-30 are incorporated by reference and made paragraphs 1-30 of this Count Four.

31. Plaintiff was terminated from his employment in retaliation for his engaging in the protected conduct of complaining about what he reasonably believed to be racially discriminatory treatment of correctional department employees and inmates.

32. Plaintiff has been damaged thereby.

## PRAYER FOR RELIEF

Wherefore Plaintiff claims the following:

1. Compensatory damages;
2. Costs incurred herein, including reasonable attorney's fees to the extent allowable by law; and attorneys fees pursuant to 42 U. S. C. Section 1988.
3. Such other relief as the Court deems just, fair and equitable.

                          THE PLAINTIFF

                          BY: */s/ Josephine S. Miller*

                          Josephine S. Miller, Fed Bar #ct27039

                          130 Deer Hill Avenue, #13

Danbury, CT.  06810

Tel:  (203)512-2795

Email:  jsmillerlaw@gmail.com