UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AARON CROMARTIE,

*Plaintiff*,

v.

STATE OF CONNECTICUT DEPARTMENT OF CORRECTION,

*Defendant*.

Civil No. 3:21cv01236 (JBA)

September 14, 2022

**RULING ON MOTION TO DISMISS**

Plaintiff Aaron Cromartie filed this lawsuit against Defendant State of Connecticut Department of Correction ("DOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and Connecticut General Statutes §§ 31-51q.[1] Specifically, Plaintiff brings four counts: (1) retaliation based on protected First Amendment expression in violation of Conn. Gen. Stat. §§ 31-51q; (2) retaliation based on protected exercise of rights under the Connecticut Constitution in violation of Conn. Gen. Stat. §§ 31-51q; (3) racial discrimination in violation of Title VII; and (4) retaliation in violation of Title VII. (Am. Compl. [Doc # 24] ¶ 36-40, p. 7-9.) Defendant now moves to dismiss the Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

**I.  Facts Alleged in the Amended Complaint**

Plaintiff is an African American man who was hired for the position of Warehouse Supervisor for the DOC in July 2020.  (Am. Compl. ¶ 7.) As part of the hiring process, Plaintiff

---

[1] Although not included as a separate count, the Amended Complaint also references "Connecticut's Fair Employment Practices Act, §31-51q." (Am. Compl. ¶ 1.) Plaintiff's counsel clarified at oral argument that inclusion of this citation was an "oversight", and that Plaintiff is not pursuing a CFEPA claim.

was required to attend and graduate from the DOC training academy, which included a class on Gang Security administered by Captain Papoosha on August 4, 2020. (*Id.* ¶ 9.) During the class, Captain Papoosha mentioned only Black and Latino gangs, and no White gangs, and used the "N" word to reference a comment made by a gang member, which caused Plaintiff to feel "offended and embarrassed." (*Id.* ¶ 10, 18.)

At the end of class, Plaintiff asked Captain Papoosha why no White gangs were mentioned or discussed, observing that "it seems as though the class was disproportionately and heavily geared towards Black and Latino gangs." (*Id.* ¶ 11.) Captain Papoosha replied that there was no need to discuss White gangs because there were not as many White gangs as Black and Latino gangs. (*Id.* ¶ 12.) As a result of this conversation, Plaintiff claims that he "reasonably believed that he, and other trainees in the academy, were being required to engage in racially discriminatory treatment of the inmates with whom they would interact, by observing and/or reporting on inmate conduct based on gang affiliation," creating a racially discriminatory term of employment. (*Id.* ¶ 14.)

At the graduation ceremony for the training academy on September 30, 2020, Plaintiff walked across the stage to receive his certificate and threw up the "Texas Longhorns Hook-Em Horns sign." (*Id.* ¶ 20.) Four weeks later, Captain Papoosha accused him of being a Latin Kings gang member, which Plaintiff refuted by explaining that he was not Hispanic, a prerequisite for being a member of the Latin Kings. (*Id.* ¶ 21-22.) Sometime between September 30 and December 4, Plaintiff was called into Captain Papoosha's office a second time and was accused of being a member of the Bloods gang, possibly with a Crips affiliation, because his Facebook account showed him wearing red clothing (a color DOC contended is a Bloods gang identifier). (*Id.* ¶ 23-24.) Plaintiff was also asked if he had any tattoos. (*Id.* ¶ 27.) Plaintiff vehemently denied the accusation and stated that he had never been a gang member. (*Id.* ¶ 25.)

On December 4, 2020, Plaintiff was informed that he was being terminated by Captain Colon, who was "unable to inform Plaintiff of the reasons fo[r] the termination." (*Id.* ¶ 28.) Plaintiff's letter of termination stated that he was terminated during his working test period for violating an Administrative Directive on Employee Conduct by engaging in "unprofessional behavior that could reflect negatively on the agency." (*Id.* ¶ 29.) Prior to this, he had not received any warning or discipline regarding his job performance, and received passes for his 30-, 60-, and 90-day appraisals. (*Id.* ¶ 30.) Plaintiff received a DOC discipline routing slip which identified the incident date resulting in termination as September 24, 2020 when a photo of cadets was taken and posted on social media showing Plaintiff displaying a potential Security Risk Group ("SRG") hand sign identified as associated with the Latin Kings and Bloods. (*Id.* ¶ 31.) However, Defendant DOC later confirmed Plaintiff was not terminated for being a gang member because it was not "conclusively determined," or for performance-related reasons, but instead for unprofessional conduct because the hand sign could be viewed as "possibly being related" to SRGs. (*Id.* ¶ 32-33.)

Plaintiff alleges that in the two years prior to his termination, only one other employee—a Black man—was terminated for displaying a perceived gang sign. (*Id.* at ¶ 34.) Plaintiff also states "[u]pon information and belief," both Hispanic and White DOC officers have been "similarly accused of being involved in gang affiliation" but are still employed by DOC. (*Id.* ¶ 35-36.)

## II. Legal Standard

Defendant brings its motion under both Rules 12(b)(6) and (b)(1). "To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must be interpreted liberally, all allegations must be accepted as true, and all inferences must

be made in the plaintiff's favor. *Heller v. Consol. Rail Corp.*, 331 F. App'x. 766, 767 (2d Cir. 2009) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Motions to dismiss "assess the legal feasibility of a complaint" and are not the place to "assay the weight of the evidence which might be offered in support" of the merits. *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.,* 432 F. Supp. 3d 131, 151 (D. Conn. 2019) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). But a complaint that only "offers 'labels and conclusions'" or "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Rather, a complaint must plead factual allegations that "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and must be "plausible on its face." *Id.* at 570.

Motions to dismiss for lack of subject matter jurisdiction are properly granted under Fed. R. Civ. P. 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Soundkeeper, Inc. v. A & B Auto Salvage, Inc.*, 19 F. Supp. 3d 426, 428 (D. Conn. 2014) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  The party invoking subject matter jurisdiction has the burden of proving it by a preponderance of the evidence, and the court should draw all inferences in its favor. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Like a motion to dismiss under 12(b)(6), the function is not to weigh the evidence and determine the likelihood that Plaintiff will prevail, but rather to assess the feasibility of the complaint and whether Plaintiff is entitled to offer evidence to support his claims. *See Soundkeeper, Inc.*, 19 F. Supp. 3d at 428.

**III. Discussion**

### A. Retaliation Under Conn. Gen. Stat. §§ 31-51q

Defendant has moved to dismiss Counts 1 and 2, both brought under Conn. Gen. Stat. §§ 31-51q, for lack of subject matter jurisdiction, claiming both counts are barred by the Eleventh Amendment's prohibition on private suits against the state in federal court unless the state waives its immunity.[2] (Def.'s Mem. Of L. in Supp. Of Mot. to Dismiss ("Def.'s Mem.") [Doc. # 27-1] at 5, *citing Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Because the DOC is a state agency, and because Connecticut has not waived its sovereign immunity in federal court for claims under the statute, Defendant maintains these counts brought under §§ 31-51q must be dismissed. (*Id.* at 5); *cf. Thurmand v. Univ. of Conn.*, No. 3:18-CV-1140 (JCH), 2019 WL 1763202, at *7 (D. Conn. Apr. 22, 2019) (dismissing Conn. Gen. Stat. §§ 31-51q claims on Eleventh Amendment grounds).

Plaintiff argues that because Count One requires interpretation of a federal issue (the First Amendment), it raises a federal question that confers subject matter jurisdiction. (*See* Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") [Doc. #29] at 3.) Plaintiff further reasons that because Count One creates federal question jurisdiction, the Court also has supplemental jurisdiction under 28 U.S.C. §1367 over Count 2 because there is a "common nucleus of operative fact." (*Id.* at 4.) Plaintiff urges reliance on *Bracey v. Board of Education,* 368 F.3d 108 (2d Cir. 2004), which held that there is federal question jurisdiction under §§ 31-51q when it requires construing the First Amendment. (*Id.* at 3.) Defendant correctly points out that *Bracey* is inapposite because it concerned a municipality, not a state, which meant the Eleventh Amendment was not at issue.

---

[2] The parties agree that federal question jurisdiction exists as to Counts 3 and 4 pursuant to 28 U.S.C. § 1331, because they were brought under Title VII.

The Eleventh Amendment states that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The "DOC is a state agency entitled to the protection of the Eleventh Amendment." *See GARRIS v. Dep't of Corr.*, 170 F. Supp. 2d 182, 186 (D. Conn. 2001). While a state may waive its immunity under the Eleventh Amendment, courts may only find waiver when "the state has spoken in the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Cook v. McIntosh,* No. CIV. 3:97CV773 (AHN), 1998 WL 91066, at *5 (D. Conn. Feb. 20, 1998) (quoting *Minotti v. Lensink*, 798 F.2d 607, 610-11 (2d Cir. 1986)).

The enactment of §§ 31-51q is no manifestation of any immunity waiver by the state from suit under this statute in federal court, nor can supplemental jurisdiction vitiate the Eleventh Amendment. *See Pawlow v. Dep't of Emergency Servs. & Pub. Prot.,* 172 F. Supp. 3d 568, 578 (D. Conn. 2016) (rejecting the argument that "the court can exercise supplemental jurisdiction over [state] claims even where Eleventh Amendment immunity is not waived" because "'neither pendent jurisdiction or any other basis of jurisdiction may override the Eleventh Amendment.'") (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)).

Because Connecticut has not waived immunity as to either cause of action in federal court, both Count 1 and Count 2 are dismissed for lack of subject matter jurisdiction.

### B.    Racial Discrimination Under Title VII

Plaintiff's race discrimination claim has two pieces: allegations of disparate treatment, and allegations of racially tainted termination, where Plaintiff was fired after being accused of gang activity by Captain Papoosha, who harbored racially discriminatory

stereotypes about black men being more likely to be gang members. (*See, e.g.,* Am. Compl. ¶ 10-12, 21-25.)

Defendant maintains that Plaintiff does not allege any direct evidence of discrimination and makes insufficient allegations to support an indirect inference of discrimination. (*Id.* at 6.) Defendant further disputes the sufficiency of Plaintiff's disparate treatment allegations on three grounds: allegations "upon information and belief" are "mere speculation;" no specific comparator is identified; and there are no allegations that the comparators are "similarly situated in all material respects." (*Id.* at 7-9.) Plaintiff defends allegations on information and belief as proper where information is peculiarly within the knowledge and possession of Defendant and that such statements are not his sole facts upon which plausibility should be determined. (*Id.* at 15-16.)

At this stage the Court's focus is on "whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*," *Littlejohn v. City of New York,* 795 F.3d 297, 312 (2d Cr. 2015), meaning Plaintiff must only "plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).[3]

Plaintiff urges that an inference of racial animus can be drawn in part from the fact that he was terminated when similarly situated Caucasian and Hispanic employees were not.

---

[3] Title VII makes it "unlawful for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish discrimination in violation of Title VII, "a plaintiff must show that he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

(Am. Compl. ¶ 37, p. 9). However, a disparate treatment claim requires the plaintiff to show that he was "similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]," *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014), and "plaintiff must still identify at least one comparator to support a minimal inference of discrimination; otherwise the motion to dismiss stage would be too easy to bypass." *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019) (quoting *Goodine v. Suffolk Cnty. Water Auth.*, No. 14-CV-4514, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017)).

Defendant is correct that Plaintiff's allegation that he was disparately treated compared with similarly situated comparators is insufficient to show plausibility. While "pleading on information and belief in employment discrimination suits can suffice to meet the relevant plausibility standard when the relevant facts are particularly within the possession, knowledge, and control of the defendant," *Oliver v. City of New York*, No. 19CV11219PGGJLC, 2022 WL 455851, at *22 (S.D.N.Y. Feb. 15, 2022), Plaintiff himself would have some knowledge about his coworkers such that his conclusory allegations alone "are not entitled to the assumption of truth and are insufficient to withstand a motion to dismiss." *See Haggood v. Rubin & Rothman, LLC*, No. 14-CV-34L SJF AKT, 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014). In *Haggood,* for example, the court held that when the plaintiff pled that there were comparators "upon information and belief" but gave no details as to "who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants," the allegations were insufficient to support an inference of discrimination. *Id.* Plaintiff's allegations here are similarly lacking. Comparing his treatment with White and Latino "DOC Officers" who were "similarly accused of being in gang affiliation" without any identifying details does not plausibly show they were "similarly situated," (Am. Compl. ¶ 34-36, 37 p.9), and his disparate treatment claim will be dismissed.

However, the plausibility of Plaintiff's claim of discriminatory discharge does not depend exclusively on allegations regarding comparators. While disparate treatment or specific racialized remarks can support such an inference, "[m]yriad other factual circumstances might plausibly suggest that a motivating factor for an employer's adverse action was the plaintiff's race." *Pinder v. Conn. Dep't of Mental Health & Addiction Servs.*, No. 3:20-CV-1918 (JAM), 2022 WL 475162, at *2 (D. Conn. Feb. 16, 2022) (citing *Vega*, 801 F.3d at 87).

Plaintiff has alleged a series of events that fall into this broad "myriad" category of factual circumstances: (a) Captain Papoosha espoused views on gang activity based on racial stereotypes; (b) Plaintiff was twice accused by Captain Papoosha of being in a gang based on racial stereotypes; (c) Plaintiff was fired in December for unarticulated reasons, (d) Defendant's formally proffered reason for termination of unprofessional conduct and displaying potential SRG hand signs of gangs he had been accused of membership in; and (e) Plaintiff's performance was satisfactory. (Pl.'s Opp'n. at 15-16.) When viewed in the light most favorable to Plaintiff, Plaintiff has plausibly alleged that the proffered reason for the adverse action was pretextual and motivated by racial animus.

Defendant's motion to dismiss Count 3, Plaintiff's racial discrimination claim, is denied.

### C. Retaliation Under Title VII

Defendant argues that Plaintiff does not allege he engaged in protected activity because inmates are not protected under Title VII and are not DOC employees, and thus complaining of their racially discriminatory treatment cannot constitute an unlawful employment practice. (Def.'s Mem. at 10-12) (citing *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999) (no retaliation claim where Plaintiff opposed discriminatory comments made about members of the public by fellow officers); *Salas v. N.Y.C. Dep't of*

*Investigation*, 298 F. Supp. 3d 676, 686 (S.D.N.Y. 2018) (opposing mistreatment of Hasidic visitors to plaintiff's division by her co-workers was not protected activity).

Plaintiff claims he was complaining about being "required by Defendant to engage in the racially discriminatory treatment of others as a term and condition of *his own* employment," based on "management [ ] instructing new hires such as Plaintiff to ignore the behaviors of security risk group members if the inmates involved were Caucasian." (Pl.'s Opp'n. at 8-9.) Plaintiff argues at a minimum that he had a "good faith belief" that Defendant's instruction was unlawful. (*Id.* at 13); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996).

However, the Complaint contains no allegation that Plaintiff complained about any term or condition of his own employment, only the treatment of those not in an employment relationship with Defendant, and his comment to Captain Papoosha does not plausibly rise to the level of opposing an unlawful employment practice because Captain Papoosha's comment cannot plausibly be construed as a workplace policy or term of employment.

The Ninth Circuit has held that being required to discriminate as a condition of employment constitutes an unlawful employment practice. *Moyo v. Gomez,* 40 F.3d 982, 984 (9th Cir. 1994) (addressing allegations that plaintiff was discharged for "for protesting against and refusing to cooperate with defendants' practice of allowing showers after work shifts to white inmates but not to black inmates working the same job shift."). The Second Circuit has not weighed in on this question (nor have any district courts within the circuit). However, Plaintiff's claim fails because Plaintiff never pleads that he was *instructed* to discriminate against Black and Latino inmates—only that he believed he was required to do so based on Papoosha's comment, which bore no hallmarks of instruction or command.

For Plaintiff's comment or action to qualify as protected activity, it must put the employer "on notice" of alleged discriminatory conduct; "ambiguous complaints" that do not

make the employer aware of the conduct are not enough. *Qamar v. Sheridan Healthcare of Conn., P.C.*, No. 3:18CV1359 (JBA), 2020 WL 4548136, at *11 (D. Conn. Aug. 6, 2020*), appeal dismissed* (Jan. 14, 2021), (quoting *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007). Without any mention of job duties, DOC policy, or what was required of him in his job, Plaintiff's comment cannot be plausibly construed as opposition to an unlawful employment practice, and the interaction as Plaintiff has pled it does not rise to the level of protected activity. Defendant's motion to dismiss Plaintiff's claim for retaliation is granted.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint [Doc. # 25] as to Counts 1, 2, and 4 is GRANTED and is DENIED as to Count 3.

The parties are directed to file a supplemental 26(f) report by September 21, 2022.

IT IS SO ORDERED.

  /s/  
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut: September 14, 2022

11